On Petitions for Rehearing
KANNER, Judge, (Ret.)
Upon the appeal by defendants-appellants from the final judgment against them in the court below in the amount of $10,000 plus interest and costs, this court entered a per curiam affirmance without opinion but with citation of cases. The parties defendant, through two separate petitions, one by Hooten and one by the other four, seek a rehearing. Our decision, based upon the cases cited and upon the record before us, entailed a thorough consideration. Feeling that a rehearing under the matters propounded through the petitions, when viewed in the light of the cited cases, would not cause us to alter our judgment, we have nevertheless decided through the medium of this opinion to particularize the views which led to our determination. Forerunner to the present case was that of State v. Hooten, Fla.App. 1960, 122 So.2d 336, wherein we held an indictment against Hooten charging the transaction here involved to have been within the prohibitory sphere of section 839.07, F.S.A.,[1] a criminal statute.
The second amended complaint first alleged that the defendant Hooten at all times mentioned in it was a county commissioner of district 3 of Lake County. It continued that the defendants Miller, Mayfield, Walker, and Kazaros held legal title to certain designated property for the benefit of all the defendants, each of whom was bene *698 ficially interested in it by reason of having contributed a portion of its purchase price. The defendants sold the land to the county for construction and operation of a county barn and in performance of public work of the county in the commissioner’s district 3 and caused the land to be conveyed to the county by the defendants Miller, Mayfield, Walker, and Kazaros and their respective wives for the price of $10,000. Defendant Hooten was a party to the sale to and purchase by the county in that he made the motion for purchase of the land in a meeting of the Board of County Commissioners of Lake County and voted affirmatively for it while having an interest in it. The purchase price was paid by the county through voucher to defendant Walker as agent; and the defendants, including Hooten, received the proceeds of the voucher. The described actions of Hooten were alleged to have been prohibited by section 839.07 and to have been unlawful. By reason of the unlawful nature of the transaction, it was averred that the plaintiff was entitled to recover from the defendants the full amount of the purchase price of the land.
Through three appeal points, defendants have presented certain contentions which, for purposes of our consideration through this opinion, we have restated under four questions: (1) Does the second amended complaint state a cause of action? (2) In order to recover the purchase price, was it incumbent upon the county to reconvey the land or offer to reconvey it? (3) May the county recover a joint judgment against all the defendants ? (4) Should the trial court have granted defendants’ motion to amend their answer to include the defense of equitable estoppel predicated upon claimed knowledge by the county commissioners of Hooten’s interest?
We consider first defendants’ challenge to the efficacy of the second amended complaint to state a cause of action. Their position is that it fell short in that there was no allegation of any wrongdoing or breach of duty on the part of anyone except possibly Hooten and no allegation as to the amount any single one of the defendants profited by the transaction, or how much money, if any, each received. As to Hooten, defendants say that nowhere does the complaint specifically allege the type or extent of his interest in the real property, nor how, when, where, or why he acquired such interest.
Basic to the question of the complaint’s-sufficiency is Town of Boca Raton v. Raulerson, 1933, 108 Fla. 376, 146 So. 576, which, as here, was an action at law. The town sought recovery of money paid by it to Raulerson for real estate upon which was constructed a town hall. The Supreme-Court of Florida upheld a special count in a declaration, demurred to successfully below, alleging that the defendant, while-serving as a town commissioner, had sold the property to the town or caused it to be sold by conveying it through an agent; and' the full amount of the purchase price was-claimed. The supreme court, evincing the view that the demurrer to the count should" have been overruled, held that a sale made-in violation of section 7470, the present 839.07, was void and that the town would be entitled to recover the full amount paid, expressly subscribing to the principle of law that where a statute pronounces a penalty for an act, a contract founded on-such act is void, although the statute does-not pronounce it void nor expressly prohibit it. Articulating the rationale back of the-rule, the court said at 146 So. page 577:
“This rule may, at a glance, seem a harsh one, because under it the town would be allowed to keep what it needs- and uses and escape payment therefor, but the statute is upon the books for all to read and heed. It is a warning-to those who become public officers that they may not take advantage of their position by dealing with themselves, and, being so warned, they enter upon such transactions at their peril. Should we apply in such instances the rule-that recovery should be limited to the-profit enjoyed from the transgression, it would open the way and extend the- *699 invitation to fraud as well as violation of the law. Men inclined to such practices, which have been condemned generally by the courts, would risk violation of the statute knowing that, if detected, they would lose none of the •original investment, while, if not discovered, they would reap a profit for •their perfidy. They would reason that they had much to gain but naught to lose. * *
Thus, in that action at law, there existed under the special count the agency of another acting for the commissioner in ef-fectuation of the sale through the making •of the conveyance to the town. The theory upon which the lower court had determined ’the issues was that the plaintiff town should recover, if at all, only the difference between '•the cost of the land to the defendant and •the amount the town paid for it. This was •rejected hy the supreme court, which held, rather, that the town was entitled to recover •the full amount of the purchase price.
Here, the complaint, expressly •charging a violation of section 839.07, depicted a transaction involving real property in which the five defendants, including Hooten, were interested, bought by the •county for a public purpose upon Hooten’s motion and paid for in the unit sum of $10,-•000 by one county voucher to one defendant •as agent, with all five receiving the proceeds. The second amended complaint therefore ■sufficed.
Although the plaintiff county submitted a request for admissions directed to .all the defendants, this request was unanswered except as to one defendant who, responding individually, nevertheless did ■not materially controvert the matters inquired about nor the allegations of the ■complaint. As to the other defendants, the facts ‘ questioned through the request are ■deemed under Rule 1.30, Florida Rules of 'Civil Procedure, 30 F.S.A., to have been admitted. Under the admissions, Hooten •was a county commissioner from November 5, 1956, through March 4, 1957. In 1955, a checking account was opened in the name of Lake County Fertilizer Company, a Florida corporation of which ITooten was president and treasurer and in which he owned five shares of stock. This checking account, which was at Citizens Bank of Clermont, was opened through deposit of $4,940 consisting of contributions by Miller, Mayfield, Walker, and Kazaros of $1,000 each and by Hooten of $940. The grantors of the property involved in this dispute shortly after that conveyed to the defendants Miller, Mayfield, Walker, and Kazaros, as grantees, the legal title to the land; and the purchase price was paid to those grantors by a check drawn on the account of Lake County Fertilizer Company and paid by the Citizens Bank of Clermont from the sums originally deposited by defendants. While a county commissioner, Hooten made a motion at the meeting of the board of county commissioners that the land be purchased by the county for construction and operation of a county barn and voted affirmatively for the purchase. Lake County warrant number 417 was issued to “HAMP WALKER, AGENT FOR RALPH L. MILLER, ET AL CLERMONT FLA.,” in the amount of $10,000 as payment by the county of the purchase price of the land. The described warrant in the amount of $10,000 was deposited to the account of Lake County Fertilizer Company at Citizens Bank in Cler-mont and was thereafter paid at First National Bank of Leesburg. Upon such payment, the proceeds of the warrant were paid by Lake County Fertilizer Company to the defendants severally. Lake County Fertilizer Company, by check drawn on the deposited proceeds of the county warrant, paid to Hooten the sum of $2,140.
During the trial before the court below, sitting without a jury, there emerged no denial of any of the essential facts. Counsel for the defendants acknowledged that construction of the county barn, together with other improvements made on the land, entailed an expense to the county substantially in excess of $10,000; and counsel for the *700 four defendants other than Hooten conceded that those defendants knew Hooten was a county commissioner.
Turning to the remaining questions above stated, we consider now the one raised with respect to necessity by the county to reconvey or offer to reconvey the property to defendants. As to this, defendants refer strongly to the language in Town of Boca Raton v. Raulerson, 146 So. page 577, “The adoption of the rule does not necessarily mean that such vendor may not recover the property conveyed under proper proceedings and proof where the property is intact in the vendee.” Both the present case and the Town of Boca Raton case were actions at law to recover the purchase price paid for land. The pleadings and facts of this case do not pose a situation rendering it necessary for us to determine circumstances under which a vendor might recover property “intact in the vendee.” Instead, as in Town of Boca Raton, the property was not intact in the vendee; but the county had improved it and erected upon it a public building at a cost greater than the price paid for the land.
There arises next the question advanced by defendants of recoverability of a joint judgment against all of them. It is submitted by the four other than Hooten that they should be free of the illegal effect of the transaction because the criminal statute upon which the judgment is founded has to do only with the activities of the public officials described in it and does not relate to private individuals. It is argued that these four defendants are wholly innocent persons who became incidentally involved in the sale of the land to the county. The effect of the judgment, they say, is to deprive them of their property without compensation.
In City of Stuart v. Green, 1945, 156 Fla. 551, 23 So.2d 831, a suit had been brought by the city to restrain an action against it by Green to enforce payment of promissory notes which the city had executed to a corporation in part payment of the purchase price of land bought by the city, some 18 years prior to the litigation, from the corporation. At that time, a certain stockholder of the corporation was also a city commissioner. After maturity, the notes had been transferred to Green, a director and principal stockholder of the corporation. The complaint charged invalidity of the transaction because violative of section 7470, C.G.L., 1927, now section 839.07, and a city charter provision similar to it. The city contended it should be relieved of liability to the endorsee and should recover from the payee the sums already paid. The complaint was dismissed and the city appealed. The supreme court, reversing, reaffirmed the pronouncement in the Town of Boca Raton case. It declined to recognize a distinction between a sale by an owner and a sale by a corporation, where the former and a stockholder in the latter are officers of the city grantee. The court cited and summarized the result of Stockton Plumbing & Supply Co. v. Wheeler, 68 Cal.App. 592, 229 P. 1020, stating that the California court had there held a contract with the city to be void, even though the city commissioner who was a party to letting it held only the position of foreman with the other contracting party.
Watson v. City of New Smyrna Beach, Fla.1956, 85 So.2d 548, was a taxpayer’s action to challenge the validity of a contract with the city for work to be done at its power plant. Originally, the lowest bid for the contract was that of “Sweat and Wright,” a partnership, rejected because Sweat was a city commissioner. A bid later submitted by Wright in his own name was accepted, and the work of the contract began. The lower court found that no such legal interest of Sweat had been established as to void the contract and that the commission had full knowledge of the relationship of the parties. The supreme court, stating that it obviously originally was intended that the partnership would compete, specified that plainly a contract based on the partnership bid would have been void. It was then said that, when *701 this obstacle was encountered, it was decided to dissolve the partnership, in effect, for the purpose of performing the one contract, though for other purposes the work of the partnership was doubtlessly to continue. Assuming that the men involved were of the highest character and stating that nothing appeared to the contrary in the record, the court nevertheless said that it did not follow that the validity of the contract should be judged by absence of proof that Sweat had a “legal interest” in it. As to the separate contract based upon the bid of Wright, the court, in reversing the decree, indicated that approval of such a separation “ * * * would amount to an inroad on a principle that the courts jealously guard and would set the precedent that partners could deal in a manner that would arose the suspicion, however ill founded, that the official, if not being directly advantaged himself, would favor the man who in other operations was his associate.” The court also observed that honest as may have been the motives of all concerned, mischief could result from such a situation in cases to follow were it to become a precedent. Again, the strictness of its decisions in such matters was pointed out by the court.
 In the case before us, the conveyance to the county of the property in which Hooten was interested was made by the four defendants who held the title. Money deposited by all five in opening a bank account of the corporation, Lake County Fertilizer Company, was used in buying the property from the grantors; in turn, when the county purchased the land, the money paid for it went into the bank account of this same corporation, and the proceeds were distributed by the corporation to the five defendants. As we have indicated, the supreme court in the Town of Boca Raton case approved the principle that where a statute pronounces a penalty for an act, a contract founded on such act is void, although the statute does not pronounce it void nor expressly prohibit it. As to Hoot-en, we need go no further than that case, his interest in the property being the crucial factor, as was true of the defendant there with respect to his ownership of the land sold to the town. It is to be remembered also, however, that in City of Stuart v. Green the notes transferred by a corporation to a private citizen after maturity were tainted with invalidity because the transaction of which they were a part was between the city and a corporation of which a city commissioner was a stockholder. No difference was recognized between a sale made to a city by an owner who was a city official and one by a corporation of which a city official was a stockholder. Additionally, in the Watson v. City of New Smyrna Beach case, the contract between the city and a private citizen was similarly infected where, for purposes of the contract, that person had attempted to divorce himself from the firm in which the city official was his partner; it did not follow, from the court’s assumption that the men were of the highest character, that validity of the contract should be judged by absence of proof of a “legal interest” of the public official. Here, there was the sale to the county made by the four defendants who were acting in the interest of all five, including the county official. The contamination through Hooten’s interest permeated the transaction.
 Finally, there is the contention of defendants that they were precluded from their right to amend their answer through denial by the court of their motion to include in it the defense of estoppel. The trial judge’s decision upon the motion of defendants was, not that they lacked the right to amend, a right which he specifically found to exist; rather, he ruled as a matter of law that the facts stated in that motion did not constitute a good defense. Those facts, which were presented as ground for the motion, were that it could be shown by evidence that the various county commissioners knew of the interest of Hooten and allowed the transaction to be consummated and a barn to be built on the property and that as a matter of equity the county should *702 not be allowed to reap both the benefits of retaining the land with the barn and of being reimbursed for the purchase price of the property. In Watson v. City of New Smyrna Beach, the court, finding entirely beside the point that portion of the trial judge’s holding which adverted to knowledge by the commission of the relationship of the parties, said that, were such knowledge a criterion, dealings between a commissioner and his firm would be sanctioned despite the clear injunction of the city charter and of section 839.07 and the doctrine that such dealings are against public policy. The principle that invalidity of a transaction cannot be cured by ratification was enunciated in City of Stuart v. Green, where the court held that “any attempt on the part of the city to ratify the forbidden contract would be futile.” This holding was reiterated in Fruchtl v. Foley, Fla.1956, 84 So.2d 906, wherein the court, citing the last mentioned case, recalled that it had been held then that “a forbidden contract could not be ratified.”
There is no question but that the four defendants who were not public officials were aware that Hooten was a county commissioner when they entered into and consummated the transaction. Insofar as the record is concerned, there is nothing to indicate that the defendants were other than men of upright character; honest as their •motives may have been, the interdiction of the statute is not, however, directed alone to dishonest or corrupt dealings.
In closing, we observe that, interestingly, the opinions in all the supreme court cases which we have cited in this decision were by the same author, Justice Thomas. Reversal by this court, under the situation 'here, would be repugnant to and inconsistent with the views we have discussed •under those cases. From what we have •said, we adhere to our judgment of affirmance and deny the petitions for rehearing.
ALLEN, C. J., and DOWNEY, JAMES "C., Associate Judge, concur.

. This section, originally enacted as Chapter 4020, Laws of Florida, Acts of 1891, which has also been referred to as section 7470, Compiled General Laws of Florida, 1927, reads:
“It is unlawful for any commissioned or other officer of this state, or for any officer elected or otherwise of any county or incorporated town or city therein, to bid or enter into, or be in any way interested in, a contract for the working of any public road or street, the construction or building of any bridge, the erecting or building of any house, or for the performance of any other public work in which the said officer was a party to the letting, and any person upon conviction thereof shall be punished by fine not exceeding five hundred dollars or imprisonment not exceeding one year.”